## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ABINGDON DIVISION

| | | |
|---|---|---|
| **IN RE:** | ) | |
| | ) | |
| **TERRY PROPERTIES, LLC,** | ) | Chapter 12 |
| | ) | |
| Debtor. | ) | Case No. 16-71449 |
| | ) | Adv. Proc. No. 16-07038 |

| | | |
|---|---|---|
| **TERRY PROPERTIES, LLC,** | ) | |
| | ) | |
| Appellant, | ) | Case No. 1:17CV00004 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **FARM CREDIT OF THE VIRGINIAS, ACA,** | ) | By: James P. Jones |
| | ) | United States District Judge |
| | ) | |
| Appellee. | ) | |

*Robert T. Copeland, Copeland Law Firm, P.C., Abingdon, Virginia, for Appellant; William E. Shmidheiser, III, Lenhart Pettit, Harrisonburg, Virginia, for Appellee.*

In this bankruptcy adversary proceeding, the debtor and appellant, Terry Properties, LLC (the "Debtor"), appeals the judgment of the bankruptcy court granting summary judgment as to the appellee, Farm Credit of the Virginias, ACA ("Farm Credit"), denying summary judgment as to the Debtor, and denying the motion of the Debtor to amend its Complaint. For the reasons described below, I will affirm the judgment of the bankruptcy court.

# I. PROCEDURAL HISTORY.

In November 2016, the Debtor filed a voluntary petition for relief under Chapter 12 of the Bankruptcy Code in the United States Bankruptcy Court for the Western District of Virginia (the "Bankruptcy Court"). Shortly thereafter, the Debtor commenced the present adversary proceeding against Farm Credit, seeking to avoid a transfer by the Debtor in October 2015 pursuant to 11 U.S.C. § 548(a)(1)(B). Farm Credit subsequently moved for summary judgment. In response, the Debtor cross-moved for summary judgment. It then moved to amend its original Complaint. All three motions were fully briefed and orally argued in a hearing before the Bankruptcy Court.

Following the hearing, the Bankruptcy Court (Paul M. Black, J.) issued a Memorandum Opinion in which it granted summary judgment as to Farm Credit, denied summary judgment as to the Debtor, and denied the Debtor' request to amend its Complaint. The Debtor appealed to this court, which has jurisdiction under 28 U.S.C. § 158(a)(1) . The appeal has been fully briefed and orally argued. For the reasons that follow, I will affirm the decision of the Bankruptcy Court.

# II. STANDARD OF REVIEW.

Because this case is a "core proceeding," the Bankruptcy Court had the power to, and did, enter a final judgment. *See* 28 U.S.C. § 157(b)(1) & (b)(2)(H); *see also Stern v. Marshall*, 564 U.S. 462, 474 (2011). I therefore review this

appeal under "traditional appellate standards," *id.* at 475; that is, I defer to the Bankruptcy Court's findings of fact unless clearly erroneous, and I review the Bankruptcy Court's conclusions of law de novo. Fed. R. Bankr. P. 8013; *see also Stern*, 564 U.S. at 515 (Scalia, J., concurring).

## III. Factual Summary.

As the Bankruptcy Court noted in its Memorandum Opinion, the facts underlying this case are clear from "the record and the documents filed by the parties, none of which have been called into legitimate question." Mem. Op., R. at 67, ECF No. 2. I agree with and adopt the Bankruptcy Court's findings of fact as described in its Memorandum Opinion. A recitation of these facts is below.

> The present dispute stems from a Loan Restructure Agreement dated October 19, 2015 (the "Agreement") . . . . The Agreement is between Farm Credit as Lender; the Debtor; Terry Dairy, LLC ("Dairy LLC"); David Wilmer Terry ("David Terry") and Jacob Jerome Terry ("Jacob Terry"), trustees of the Ernest Epperson Terry Trust, a testamentary trust (the "Trust"); and David Terry, Jason B. Terry, Jacob Terry, and Levi Ernest Terry individually. The individual Terrys and the Trust are jointly and severally defined as the "Borrower" in the Agreement.

> As of the date of the Agreement, the Borrower . . . was indebted to Farm Credit in connection with five different obligations: (1) a 2015 Non Revolver Loan in the original principal amount of $200,000.00, (2) a 2015 Fixed Rate Loan in the original principal amount of $1,034,189.35, (3) a 2012 Fixed Rate Loan in the original principal amount of $110,000.00, (4) a 2010 Non Revolver Loan in the original principal amount of $1,400,000.00, and (5) a 2009 Fixed Rate Loan in the original principal amount of $518,000.00, all as modified or extended.

R. at 67-68.

These five obligations were secured by, among other things, three credit line deeds of trust (the "Deeds of Trust") on real property located in Wythe and Smyth Counties, Virginia (the "Property"). Each of the Deeds of Trust named the Trust as the Grantor and secured any and all indebtedness of the "Grantor" — that is, the Trust — to Farm Credit. R. at 68. The Deeds of Trust secured maximum principal amounts of (1) $518,000, (2) $1,400,000, and (3) $110,000, respectively. *Id.*; Agreement, R. at 29, ECF No. 3.

According to the Agreement, the Borrower had sought to restructure its loans with Farm Credit in March 2015. Farm Credit denied the application as submitted, and the parties subsequently negotiated a "mutually agreeable restructure plan," which is captured in the Agreement. R. at 30. In the Agreement, the Borrower indicated to Farm Credit that the Trust would be "dissolve[d] and liquidate[d] . . . with its assets and liabilities (including the liabilities of the Trust to Lender with respect to the Loans and Loan Documents) being divided between, transferred to and assumed by the Dairy LLC and [the Debtor]." *Id.*

The Agreement also set forth the terms and conditions under which Farm Credit agreed to the dissolution of the Trust and the transfer of its assets to the Debtor and Dairy LLC. One condition states:

> The Property shall be transferred to [the Debtor] by deed of assumption acceptable to [Farm Credit] in form and substance, pursuant to which [the Debtor] acknowledges and agrees by countersignature to assume all obligations of the Trust under and with

respect to the Deeds of Trust, the Notes and the other loan Documents.

*Id.* The Agreement also provided that:

> Upon transfer of the real estate from the Trust to [the Debtor] (which shall occur by deed of assumption approved by [Farm Credit] as described . . . above), [the Debtor] shall take title subject to the lien of the Deeds of Trust, which it acknowledges. [The Debtor] agrees to perform all obligations under the Deeds of Trust, and will execute and deliver any and all documents and instruments requested by [Farm Credit] to evidence, replace, or restate and consolidate the Deeds of Trust.

R. at 34. In addition, the Agreement further stated:

> To facilitate such transfer and as a condition to the restructure of the Loans under this Agreement, Dairy LLC and [the Debtor], jointly and severally, hereby expressly assume and promise to pay and perform all obligations of the Trust under the Notes, Deeds of Trust, and other Loan Documents to which the Trust is a party.

R. at 31.

Pursuant to the Agreement, on October 19, 2015, a Deed of Assumption was executed by which the Trust conveyed the Property, subject to the Deeds of Trust, to the Debtor. See Deed of Assumption, R. at 54, ECF No. 3. On the same day, the Debtor executed a Credit Line Deed of Trust Modification and Substitution of Trustee for each of the three Farm Credit Deeds of Trust ("Deed of Trust Modifications"). Importantly, the Bankruptcy Court determined that the execution of the Deed of Trust Modifications occurred "[c]ontemporaneously with the execution of the Deed of Assumption." Mem. Op., R. at 69, ECF No. 2. It also found that the Deed of Trust Modifications:

- 5 -

[C]hanged the definition of "Grantor" to Terry Properties, LLC (the Debtor), confirmed that the indebtedness secured included, without limitation, all indebtedness and obligations of the Terrys individually, the new Grantor, Terry Dairy, LLC and/or the Trust to Farm Credit, as well as any modifications, extensions or renewals thereto. *The modification documents did not increase the face amounts secured by the Farm Credit [Deeds of Trust].*[1]

*Id.* (emphasis added). See also Credit Line Deed of Trust First Modification and Substitution of Trustee, R. at 12, ECF No. 2.

The Bankruptcy Court took specific note of the times of the public recordings of the documents. "The Deed of Assumption was recorded in the Wythe County, Virginia Circuit Court Clerk's Office on October 22, 2015 at 2:22 p.m., and in the Smyth County, Virginia Circuit Court Clerk's Office at 4:15 p.m."[2] Mem. Op., R. at 70, ECF No. 2. The Deed of Trust Modification to the first Deed of Trust ($518,000) was recorded in Wythe County at 2:45 p.m. the same day. The Deed of Trust Modifications for the second and third Deeds of Trust ($1,400,000 and $110,000) were recorded at 2:47 p.m. and 2:50 p.m., respectively. *Id.* at 5 n.3.[3]

---

[1]  Footnote omitted.

[2]  Footnote omitted.

[3]  The Complaint raises a fraudulent conveyance claim only as to the Deed of Trust Modification to the first Deed of Trust ($518,000). In its Motion to Amend, the Debtor seeks to raise such claims as to the Deed of Trust Modifications for the second and third Deeds of Trust as well. See Mot. to Amend, R. at 31, ECF No. 2. I address the Motion to Amend *infra* at V.

IV. Summary Judgment.

Federal Rule of Civil Procedure 56(a)[4] requires a court to grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on cross-motions for summary judgment, the court must, "[w]ith respect to each side's motion, . . . view the facts and all justifiable inferences arising therefrom in the light most favorable to the nonmoving party." *Kolbe v. Hogan*, 849 F.3d 114, 130 (4th Cir. 2017).

There are no material facts in dispute here. As the Bankruptcy Court noted, and as I reiterate above, the facts are clear from the record and documents filed by the parties. Counsel for the Debtor also represented at oral argument before this court that the Debtor does not dispute the authenticity of the documents at issue. Hr'g Tr. 2:17-19, Jun. 19, 2017, ECF No. 16. The appropriateness of summary judgment in this case therefore turns solely on whether one of the parties is entitled to judgment as a matter of law. The Bankruptcy Court found that Farm Credit is entitled to such judgment, and I agree.

This case arose because the Debtor seeks to avoid the transfer of a "security interest in [its] assets," which it asserts was "for the benefit of Terry Dairy, LLC

---

[4] The Federal Rules of Bankruptcy Procedure provide in substantial part that "[Federal Rule of Civil Procedure 56] applies in adversary proceedings." Fed. R. Bankr. P. 7056.

and certain guarantors." Compl., R. at 10, ECF No. 2. The alleged "transfer" in question is a modification of the first Deed of Trust, which secures a maximum principal amount of $518,000.[5] See Debtor's Mem. Supp. Summ. J., *Terry Properties, LLC v. Farm Credit of the Virginias, ACA*, No. 16-07038, ECF No. 17. The Debtor asserts that the Modification may be avoided because the Modification transferred a security interest in the Debtor's Property to Farm Credit, the Debtor did not receive "reasonably equivalent value in exchange," and the Debtor "became insolvent as a result of such transfer." 11 U.S.C. § 548(a)(1)(B). Farm Credit contends in response that there was no "transfer" to be avoided and that if the Debtor is insolvent, it did not become so as a result of the transfer sought to be avoided.

When the Debtor acquired the Property pursuant to the Agreement, it did so subject to the lien created by the 2009 Deed of Trust. The original 2009 Deed of Trust secured the indebtedness of the Trust to Farm Credit, up to the limit of $518,000, "plus interest thereon." 2009 Deed of Trust, R. at 73, ECF No. 3. The original impetus for this 2009 Deed of Trust was to secure a loan — the "2009 Fixed Rate Loan" — in an original principal amount of $518,000. Importantly, however, the 2009 Deed of Trust does not secure the 2009 Fixed Rate Loan specifically; instead, it secures "*[a]ll* indebtedness and obligations, whether now

---

[5] For the sake of simplicity, I will refer to this Deed of Trust as the "2009 Deed of Trust" and to its modification as the "Modification."

existing or hereafter arising . . . of the [Trust] to [Farm Credit], not exceeding in the aggregate . . . the principal amount of [$518,000]." *Id.* (emphasis added).

Because the 2009 Deed of Trust may provide an interest in the Property as security for "all" of the Trust's indebtedness and obligations to Farm Credit, it can secure other loans from Farm Credit — in addition to the 2009 Fixed Rate Loan — up to a total amount of $518,000. The outstanding principal balance of the 2009 Fixed Rate Loan, as of the execution of the Agreement in October 2015, was $445,466.57. Agreement, R. at 33, ECF No. 3. As of that date, therefore, the 2009 Deed of Trust had $72,533.43 worth of "credit" available.[6] Put another way, $72,533.43 from one or more additional loans between the Trust and Farm Credit could be secured by the Property pursuant to the 2009 Deed of Trust.

The Modification, which the Debtor now seeks to avoid, defines "indebtedness" to include the indebtedness of David Terry, Jason Terry, Jacob Terry, and Levi Terry (hereinafter "Four Terrys"); the Debtor; and Dairy LLC, in addition to the Trust, to Farm Credit. Modification, R. at 13, ECF No. 2. Importantly, the Modification does not increase the credit limit of $518,000. The Debtor nevertheless asserts that, by changing the definition of "indebtedness," the Modification has made the Property "liable on two additional promissory notes" — the 2015 Nonrevolver Loan and the 2015 Fixed Rate Loan — with a balance

---

[6] $72,533.43 is the difference between the credit limit ($518,000) and the outstanding principal amount of the 2009 Fixed Rate Loan ($445,466.57).

totaling "over [$1.2 million]."[7]   Debtor's Mem. Supp. Summ. J. at 6, No. 16-07038, ECF No. 17.   The Debtor further argues that this new liability is problematic because the Debtor did not receive "reasonably equivalent value in exchange" for transferring this security interest in the Property to Farm Credit and that it "became insolvent as a result of such transfer."   *Id.* at 3, 4.   I disagree.

### *A. There Was No "Transfer."*

The Debtor argues that that Modification did constitute a "transfer" because it "increase[d] the amount of the outstanding debt that was covered by [the] deed of trust."   Debtor-Appellant's Br. 10, ECF No. 10.   Again, I do not agree.

The Modification did not "transfer" a security interest in the Property.   To start, the Modification does not increase the credit limit of the 2009 Deed of Trust. In addition, the Agreement indicates that the Trust's five loans with Farm Credit, including the 2015 Nonrevolver and Fixed Rate Loans, were jointly taken out by the Trust and the Four Terrys.   Agreement, R. at 28, ECF No. 3 (stating that "Borrower" is indebted under the five loans and defining "Borrower" as the Four Terrys, "jointly and severally with the Trust").   Because the original 2009 Deed of Trust provided security for "all" loans taken by the Trust, the 2015 loans were already included, prior to the Modification, as loans that could be secured by the

---

[7]   The "2015 Nonrevolver Loan" had an original principal amount of $200,000, and the "2015 Fixed Rate Loan" had an original principal amount of $1,034,189.35. Agreement, R. at 32, ECF No. 3.

Property. The Modification's expansion of the term "indebtedness" therefore did not secure any loans that were previously unsecured, and no "transfer" of a security interest occurred. If some portion of the 2015 loans are, in fact, currently secured by the Property, it is not because the Modification transferred any security interest in the Property — it is because the original 2009 Deed of Trust provided the Property as security for "all" the debts of the Trust, and the 2015 loans were among those debts.

## B. The Debtor Received "Reasonably Equivalent Value."

The Debtor asserts that it "did not receive any consideration" in exchange for the alleged transfer effected by the Modification. Debtor's Mem. Supp. Summ. J. at 3, No. 16-07038, ECF No. 17. I have already concluded that there was no "transfer" of any security interest. See *supra*. Even if there was a transfer, however, the Debtor did receive a "reasonably equivalent value" in exchange: the Property.

For purposes of these motions, the effect of the Agreement can be distilled into one simple exchange: the Debtor received the Property in exchange for assuming the debts of the Trust. Under the Agreement, the Debtor and Dairy LLC became jointly and severally liable to "pay and perform all obligations of the Trust" with regard to the five loans, three Deeds of Trust, and other "Loan Documents to which the Trust is a party." Agreement, R. at 31, ECF No. 3. With

respect to each of the five individual loans made by Farm Credit to the Trust, the Agreement made Dairy LLC the primary borrower, with the Four Terrys and the Debtor jointly and severally liable for all the loans as co-borrowers. R. at 31-33. In return for becoming jointly and severally liable for all of the Trust's indebtedness to Farm Credit, the Debtor received ownership of the Property. This ownership was expressly contingent on its assumption of the debt. R. at 31 (stating that "[n]o dissolution of the Trust or transfer of assets from the Trust to . . . [the Debtor] shall occur until all of the foregoing conditions have been satisfied").

The Debtor argues that the Modification's alleged transfer of a security interest was its own transaction, separate from the Agreement, which required separate consideration in order to be valid. See Debtor-Appellant's Br. 14, ECF No. 10 (asserting that the Modification was a "subsequent transfer[]" to the Deed of Assumption). In so arguing, it focuses heavily on the "gap in time" between the placing on public record of the Deed of Assumption and the Modification. Hr'g Tr. 7:7-9, June 19, 2017, ECF No. 16; *id.* at 8:8-11 (confirming that the Debtor's case "entirely comes down to the fact that there was a 30 some minute gap in recording the . . . documents"). However, it offers no support whatsoever for the idea that such a gap necessarily means the second recordation was a separate transaction requiring additional consideration. *Id.* at 26:22-25; 27:1-17. Indeed, under such a theory, there would be a fraudulent conveyance in every case

requiring the recordation of both a deed of assumption and a deed of trust. This is clearly not the case.[8]

The Modification and the Deed of Assumption were executed pursuant to, and on the same day as, the Agreement — not as stand-alone transactions. I agree with the Bankruptcy Court's conclusion that "[t]his was one consolidated transaction, not one transaction followed by another." Mem. Op., R. at 72-73, ECF No. 2. The terms of the original 2009 Deed of Trust provide that the Property secures "*[a]ll* indebtedness and obligations" of the Trust to Farm Credit, "whether now existing or hereafter arising and . . . whether contracted by the [Trust] alone, jointly, or jointly and severally with another." 2009 Deed of Trust, R. at 73, ECF No. 3 (emphasis added). The purpose of the Agreement was to dissolve the Trust, distribute its assets to the Debtor and Dairy LLC, and pass its indebtedness and obligations to the Debtor, Dairy LLC, and the Four Terrys. Thus, the Modification, a document revising the original 2009 Deed of Trust to provide that the Property may secure the indebtedness and obligations of the Debtor, Dairy LLC, and the Four Terrys, in addition to the Trust, is a clear effectuation of the

---

[8] The Debtor also seems to argue that it received less than "equivalent value" because it "transfer[red] its property in exchange for consideration which passe[d] to a third party." Debtor-Appellant's Br. 14, ECF No. 10 (internal quotation marks and citations omitted). This assertion is likewise unsupported and, frankly, puzzling under the circumstances. Even if the Debtor did transfer a security interest in its property to Farm Credit, the identity of the third party that supposedly received this unspecified consideration remains a mystery.

terms of the Agreement.  The same is true of the Deed of Assumption, a document

transferring ownership of the Property to the Debtor subject to the Deeds of Trust.

It is clear that the Modification and Deed of Assumption were executed

contemporaneously pursuant to the Agreement.  Accordingly, just as the Debtor

assumed the debt of the Trust in exchange for receipt of the Property, any transfer

affected by the Modification was in exchange for receipt of the Property as well.

The Debtor did, therefore, receive "reasonably equivalent value" in exchange for

any transfer that occurred.

### C.  The Debtor Did Not Become Insolvent as a Result of the Alleged Transfer.

Finally, the Debtor argues that it "became insolvent as a result of" the

alleged transfer.  11 U.S.C. § 548(a)(1)(B)(ii)(I).  It asserts that the value of the

Property was approximately $1.92 million, that the balance of the three loans

originally associated with the Deeds of Trust was approximately $1.76 million, and

that the Debtor's further assumption of the 2015 loans — with a balance "totaling

over [$1.2 million]" — rendered the Debtor insolvent "by over [$1 million]."

Debtor-Appellant's Br. 14-15, ECF No. 10.  Farm Credit, by contrast, contends

that the Debtor could not "become" insolvent, either as a result of the alleged

transfer or its assumption of the Trust's debt, because it did not exist prior to the

alleged transfer or its assumption of debt.  Farm Credit's Opp'n to Debtor's Summ. J., R. at 7, ECF No. 5.

The Debtor's argument in this regard is fundamentally flawed.  By asserting that the Modification rendered it insolvent by over a million dollars, it necessarily contends — contrary to its own prior assertions — that the effect of the Modification was to cause the Debtor to assume the entire $1.2 million balance of the 2015 loans.  As I note above, this is clearly not the case: the Debtor assumed all the debts of the Trust as part of the Agreement.  Agreement, R. at 31, ECF No. 3.

Furthermore, as Farm Credit correctly points out, the Modification cannot have rendered the Debtor insolvent because the Modification, along with the Deed of Assumption, was part of a single transaction.  The argument that the Modification caused the Debtor to become insolvent requires that the Debtor have existed in a state of viability prior to the execution of the Modification.  However, because the Modification and the Deed of Assumption were executed at the same time, pursuant to the Agreement, there was never a time when the Debtor owned the Property free of the liens imposed by the Deeds of Trust and without being obligated on the debts of the Trust.  In short, because the Deed of Assumption and the Modification were executed "[c]ontemporaneously," Mem. Op., R. at 69, ECF

No. 2, the Modification cannot have caused the Debtor to become insolvent after it received the Property.[9]

### D. Farm Credit is Entitled to Summary Judgment.

Because there are no material facts in dispute, I need only decide whether either of the parties is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). As the plaintiff in the adversary proceeding, the Debtor's Trustee bears the burden of proving that the transfer sought to be avoided was fraudulent. *See Cooper v. Ashley Commc'ns, Inc. (In re Morris Commc'ns NC, Inc.)*, 914 F.2d 458, 466 (4th Cir. 1990) (citing Collier on Bankruptcy § 548.09 (15th ed. 1984)).[10] For the reasons stated above, I find that it has not met this burden. There was no transfer of the Debtor's interest in the Property. Even if there was, the Debtor received a reasonably equivalent value in exchange for the transfer and was neither insolvent when the transfer occurred nor became insolvent as a result of the transfer. As a matter of law, therefore, there was no fraudulent transfer, and I will

---

[9]    The Debtor does not argue that the transfer was fraudulent because it was *already* insolvent on the date the transfer was made. See Debtor-Appellant's Br. 14-15, ECF No. 10. I note, however, that such an argument would fail for the same reason: the Debtor could not have been insolvent when the Deed of Assumption and Modification were executed because it owned no assets and owed no debts prior to the execution of those documents.

[10]    *Cooper* refers to the burden of proving a fraudulent transfer under § 548(a)(2)(A) and (B). These provisions of the statute have since been renumbered to § 548(a)(1)(B)(i) and (ii). *Compare* 11 U.S.C. § 548 (1998) *with* 11 U.S.C. § 548 (2012).

affirm the Bankruptcy Court's grant of summary judgment to Farm Credit and denial of summary judgment to the Debtor.

### E. *The Bankruptcy Court Did Not Err in Considering the Documents.*

On appeal, the Debtor objects to the Bankruptcy Court's consideration of the various loan documents. Federal Rule of Civil Procedure 56(c)(2) allows a party to "object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). The Debtor argues that because it "objected to the use of the documents" on which the Bankruptcy Court relied, Farm Credit was required to "either authenticate the document[s] or propose a method [of] doing so at trial." Debtor-Appellant's Br. 7-8, ECF No. 10 (quoting *Jones v. W. Tidwater Reg'l Jail*, 187 F. Supp. 3d 648, 654 (E.D. Va. 2016)). It further protests that Farm Credit did not do so, as "there was never any testimony to introduce [the documents] into evidence, nor was there any declaration or affidavit offered by [Farm Credit] that would support that the signing of the documents and the transfer of the interest in the real estate of the plaintiff were all part of one transaction." *Id.* at 7. Because Farm Credit did not rebut the Debtor's objection, the Debtor argues, the Bankruptcy Court could not permissibly consider the documents in granting summary judgment.

This argument is meritless. To start, the objection that Farm Credit did not introduce the documents into evidence is entirely unrelated to the complaint that

Farm Credit did not sufficiently prove that the Deed of Assumption and the Modification were part of a single transaction. Farm Credit was not required to offer a "declaration or affidavit" showing that the execution of these documents comprised a single transaction. The Debtor's objection on this point is really that it disagrees with the court's conclusion as to the nature of the transaction — not that Farm Credit failed to fulfill a nonexistent obligation to provide an affidavit. Whether or not Farm Credit provided a declaration or affidavit as to the nature of the transaction is wholly irrelevant to the question of whether the documents themselves were authentic.

Next, an objection that Farm Credit did not actually introduce the documents into evidence is not a valid objection under the plain language of Rule 56(c)(2). Rule 56(c)(2) allows a party to object that certain evidence "*cannot* be presented" in an admissible form — not that it *has not yet* been presented in an admissible form. Indeed, in so arguing, the Debtor ignores case law it quotes in its own brief: The "objection . . . contemplated by [Rule 56(c)(2)] is *not* that the material has not been *submitted* in an admissible form*, but that it *cannot* be." *Id*. at 8 (quoting *Jones*, 187 F. Supp. 3d at 654 (emphasis added) (internal quotation marks and citations omitted)). The Debtor has not attempted to argue that the documents provided by Farm Credit are incapable of being adduced in a form admissible at trial — only that the documents have not *actually* been admitted.

Furthermore, it does not appear that the Debtor objected to the authenticity of the documents, as it claims. In asserting that it did so, the Debtor points to the transcript of the hearing before the Bankruptcy Court. *Id.* The portion of the transcript to which it cites, however, shows only the Debtor's counsel asserting that the Modification and the Deed of Assumption were "not part of the same agreement. There . . . are no facts in the record that say it's all part of the same agreement. There's no affidavit filed by Farm Credit. . . . What is in the record is the deed itself." Hr'g Tr., R. at 15:24-16:4, ECF No. 8. Counsel for the Debtor did not, in fact, object to the authenticity of the documents or assert that they could not be presented in a form that would be admissible at trial — instead, he merely objected to Farm Credit's characterization of the transaction as a single transaction and protested that it had not filed an (unnecessary) affidavit to that effect. In any event, such an objection, even if made, would be baseless.

Finally, counsel for the Debtor conceded at oral argument before this court that the documents provided by the parties are authentic. Hr'g Tr. 2:17-19, Jun. 19, 2017, ECF No. 16. In light of the foregoing, I decline to find that the Bankruptcy Court erred in considering the documents provided by the parties.[11]

---

[11] The Debtor also raises, on appeal, the argument that the Bankruptcy Court "ignored the status of the Debtor as a debtor in possession." Debtor-Appellant's Br. 15, ECF No. 10. It asserts that a Chapter 12 "debtor can pursue avoidance actions" and that it "has the powers granted to a trustee . . . as a creditor" as well as the power to avoid a fraudulent transfer. *Id.* It then argues that, due to the gap in time between the recordation

- 19 -

## V.  MOTION TO AMEND.

The Federal Rules of Civil Procedure[12] provide that "a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  However, leave to amend a pleading may be denied where "the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile."  *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999) (internal quotation marks and citation omitted).

The Debtor seeks to amend its Complaint in two ways.  First, it seeks to avoid two similar transfers as fraudulent: the modification of the 2010 Deed of Trust and the modification of the 2012 Deed of Trust.  Second, it seeks to avoid as fraudulent the Loan Restructure Agreement itself, on the grounds that the Agreement makes the Debtor a cross-guarantor on behalf of Dairy LLC.  Debtor-

---

of the Deed of Assumption and the Modification, "there would have been a period of time when [a] hypothetical lien creditor's lien was diminished as a result of the increase in the balance due under the [sic] each deed of trust that was amended."  *Id.* at 16.

This argument fails for the same reason the rest of the Debtor's argument fails: because the recordation of the documents was part of a single transaction, and therefore the "gap in time" was meaningless.  Moreover, the Modification did not increase the balance due under the Deed of Trust; the Debtor assumed all of the Trust's debts pursuant to the Agreement, and the Modification neither increased that debt load nor increased the credit limit of the Deed of Trust.

[12]  Federal Rules of Bankruptcy Procedure provide that "[Federal Rule of Civil Procedure 15] applies in adversary proceedings."  Fed. R. Bankr. P. 7015.

Appellant's Br. 16, ECF No. 10; Debtor's Mot. to Amend Compl., R. at 31-32, ECF No. 2.[13]  I address each amendment in turn.

### *A. The First Proposed Amendment is Futile.*

First, the Debtor seeks to avoid the modifications of the 2010 and 2012 Deeds of Trust, claiming that these transfers were fraudulent under 11 U.S.C. § 548(a)(1)(B).  The bases for these additional claims are identical to the basis for the original claim of avoiding the Modification of the 2009 Deed of Trust.  The Bankruptcy Court denied the Debtor's motion to amend on the ground that "amendment to the Complaint would be futile" because "the Court's analysis of [the additional] claims is the same as for the single transfer alleged in the original Complaint."  Mem. Op., R. at 77, ECF No. 2.

I agree with the Bankruptcy Court that amendment would be futile.  As the Bankruptcy Court noted, and as the Debtor concedes, the arguments the Debtor would make to avoid the 2010 and 2012 modifications would be identical to the argument made to avoid the Modification above.  The facts are clear from the documents filed by the parties, and there is no indication that the circumstances surrounding the execution of the 2010 and 2012 modifications are at all different

---

[13]  Counsel for the Debtor also suggested at oral argument that the Debtor would seek to show that Farm Credit defrauded the Trust and Four Terrys in executing the Loan Restructure Agreement itself.  Hr'g Tr. 12:18-25, 13:1-11, Jun. 19, 2017, ECF No. 16.  Because such allegations are not included in the Proposed Amended Complaint, however, I will not consider them here.

from those surrounding the execution of the first Modification. The Debtor does not attempt to assert that its theory of recovery for the 2010 and 2012 modifications will be different from the theory it has already asserted with respect to the Modification.

Because I have found as a matter of law that the first Modification was not a fraudulent transfer, and because the proposed amendment asserts substantially identical claims with identical theories of recovery, it is evident that these proposed claims will also be defeated as a matter of law. Amendment of the Complaint would therefore be futile, and I deny the Debtor's motion accordingly.

### B. The Second Proposed Amendment is Futile.

Second, the Debtor seeks to avoid the Loan Restructure Agreement itself, on the grounds that it caused the Debtor to become a guarantor on behalf of Dairy LLC and that this guarantee constitutes a fraudulent transfer under 11 U.S.C. § 548(a)(1)(B). It asserts in its brief that by executing this "cross guarantee agreement," the Debtor "became liable . . . for an additional amount of over nine hundred thousand dollars . . . in debt that it did not previously have." Debtor-Appellant's Br. 15, ECF No. 10. At oral argument, counsel for the Debtor confirmed that the Debtor sought to "challenge the actual restructuring agreement" and its "granting of a cross guarantee for the benefit of [Dairy LLC] and the [Four Terrys] by [the Debtor]." Hr'g Tr. 6:15-17, Jun. 19, 2017, ECF No. 16. Counsel

asserted that this "underlying cross collateralization, cross default, cross guarantee agreement" was avoidable as a fraudulent "insider guarantee[]." *Id*. at 9:18-19, 25. Counsel further argued that the alleged guarantee was avoidable under § 548 because "there [wa]s no consideration for the granting of the cross guarantee." *Id*. at 10:1-2. When the Debtor executed this alleged guarantee, he said, it "got . . . another $900,000 worth of debt on its shoulders" without "get[ting] $900,000 worth of collateral." *Id.* at 13:10-11.

Amending the Complaint to include this claim as articulated by the Debtor would be futile for two reasons. First, the Agreement the Debtor seeks to avoid does not make it a cross guarantor. Pursuant to the Agreement, the Debtor, along with Dairy LLC, "jointly and severally . . . assume[d] and promise[d] to pay and perform all obligations of the Trust under the Notes, Deeds of Trust, and other Loan Documents." Agreement, R. at 31, ECF No. 3. In addition, the Agreement made the Debtor a "co-borrower" on the five loans with Farm Credit, with the Four Terrys (and the Trust, prior to its dissolution) also serving as "co-borrowers" and Dairy LLC serving as the "primary borrower." R. at 32-33. The Agreement further provided that the Debtor, Dairy LLC, Four Terrys, and the Trust would serve as "joint and several co-borrowers" on future "Note Modification Agreement[s] or substitute Note[s]." *Id.* Finally, the Agreement provides that the

Debtor took title to the Property "subject to the lien of the Deeds of Trust" and that it "agrees to perform all obligations under the Deeds of Trust." R. at 34.

In short, the Agreement clearly makes the Debtor a co-borrower. It does not, as a matter of law, make it a guarantor. See also Mem. Op., R. at 77, ECF No. 2 ("[U]nder the Agreement, the Debtor agreed to be a co-borrower, not a guarantor.") Seeking to avoid the Agreement on the grounds that it fraudulently made the Debtor a guarantor or cross-guarantor for the benefit of "insiders" is therefore a waste of time, and it would be futile to permit the Debtor to amend its Complaint to raise such a claim.

Second, the Debtor would only be permitted to avoid the entire Agreement if it could show that it "received less than a reasonably equivalent value in exchange for" assuming the obligation of the Trust's debt. 11 U.S.C. § 548(a)(1)(B)(i). I have already concluded, however, see *supra* at IV.B, that the Debtor received the Property in exchange for assuming the Trust's debts and that this exchange was one of "reasonably equivalent value." The issue of whether the Property served as "reasonably equivalent value" was necessary to the resolution of the Debtor's original claim, and the parties have actually litigated it. As a result, under the law of collateral estoppel, the Debtor would be precluded from relitigating that issue with regard to its proposed claim. *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n.5 (1979) (stating that collateral estoppel "precludes relitigation of issues

actually litigated and necessary to the outcome of the first action"). Because a favorable resolution of the issue would be necessary to the Debtor's proposed second claim, and because the Debtor will be unable to relitigate the issue, amending the Complaint to incorporate this proposed claim would be futile.

## VI. CONCLUSION.

For the foregoing reasons, the decision of the Bankruptcy Court is AFFIRMED. A separate judgment will be entered herewith.

DATED:  August 30, 2017

/s/  James P. Jones
United States District Judge